POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEREMY LIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CIVITAS RESOURCES, INC., M. CHRISTOPHER DOYLE, and MARIANELLA FOSCHI,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jeremy Lin ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

1

attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Civitas Resources, Inc. ("Civitas" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Civitas securities between February 27, 2024 and February 24, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Civitas is an independent exploration and production company focused on the acquisition, development and production of crude oil and liquids-rich natural gas from its assets in the Denver-Julesburg ("DJ") Basin in Colorado and the

Permian Basin in Texas and New Mexico. As of December 31, 2024, the Company owned a working interest in a net total of 530,200 acres.

3.      Civitas recognizes revenue from the sale of produced crude oil, natural gas, and natural gas liquids ("NGL"). Accordingly, maintaining high volumes of oil production is critical to the Company's ability to achieve revenue growth.

4.      Throughout 2024, Civitas maintained steady oil production and accelerated the number of the Company's turned-in-lines ("TILs")—*i.e.*, newly drilled oil wells that have been designated as operational and added to the total number of wells in which Civitas owns a working interest—between the DJ and Permian Basins. However, unbeknownst to investors, oil production in the DJ Basin peaked in the fourth quarter ("Q4") of 2024 and, during the same period, Civitas began reducing the pace in which it turned in new lines.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Civitas was highly likely to significantly reduce its oil production in 2025 as a result of, *inter alia*, declines following the production peak at the DJ Basin in the fourth quarter of 2024 and a low TIL count at the end of 2024; (ii) increasing its oil production would require the Company to acquire additional acreage and development locations, thereby incurring significant debt and causing

3

the Company to sell corporate assets to offset its acquisition costs; (iii) the Company's financial condition would require it to implement disruptive cost-reduction measures including a significant workforce reduction; (iv) accordingly, Civitas's business and/or financial prospects, as well as its operational capabilities, were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.    On February 24, 2025, Civitas announced its financial results for the fourth quarter and full year 2024. Among other items, the Company reported revenue of $1.29 billion, missing consensus estimates by $3.44 million, and non-GAAP earnings per share ("EPS") of $1.78 for the quarter, missing consensus estimates by $0.21 per share. In addition, Civitas reported net income of $151.1 million, or $1.57 per share, compared with $302.9 million, or $3.23 per share, in the year-ago quarter, and interest expense—the cost incurred by an entity for borrowed funds—of $456.3 million for the year.

7.    That same day, Civitas issued a press release detailing the Company's 2025 outlook, which Civitas claimed was "designed to maximize free cash flow." The press release listed several 2025 outlook highlights, including "[d]elivering oil production between 150 and 155 thousand barrels per day ('MBbl/d') on average,"—a year-over-year decline of approximately 4%—"[e]xpanding [its] Permian Basin position with a $300 million bolt-on transaction that adds 19,000 net

4

acres and approximately 130 future development locations in the Midland Basin," and "[e]xecuting on [a] new divestment target of $300 million" meant to offset the foregoing transaction. Further, the press release stated, in relevant part, that "[f]irst quarter [2025] oil volumes are expected to be the low point for the year, averaging 140 to 145 MBbl/d, mostly as a result of few TILs in late 2024 and early 2025." The Company explained that "[a]s compared to the fourth quarter of 2024, lower volumes are primarily driven by the DJ Basin, due to natural declines following peak production in the fourth quarter, a low TIL count exiting 2024 and in the first quarter of 2025," as well as severe winter weather and unplanned third-party processing downtime in the first quarter. In addition, Civitas announced a 10% reduction in its workforce across all levels, purportedly to "solidify the Company's low-cost structure."

8. Finally, in a filing on Form 8-K with the SEC, Civitas also announced the termination of its Chief Operating Officer ("COO") Hodge Walker, who had occupied the role for only 22 months, and Chief Transformation Officer ("CTO") Jerome Kelly, effective immediately.

9. Market analysts were quick to comment on the Company's announcements, expressing particular concern about Civitas's reduced 2025 oil production guidance. For example, on February 24, 2025, the investment bank KeyBanc Capital Markets ("KeyBanc") downgraded Civitas to Sector Perform from

Outperform, stating that it was "confused and disappointed" by the results and the "tepid" 2025 outlook, and finding it prudent to "wait for more clarity on operations [and] the balance sheet[.]"  Further, KeyBanc noted that it was "anticipating news of inorganic debt reduction, likely in the form of a meaningful sale of DJ Basin assets, [but] news of another round of $300M of asset sales does not move the needle for a company with over $5B of debt (pro forma for 1Q25 transactions)."  KeyBanc also stated that it was concerned by the Company's interest expense guidance and that the decision to buy Midland Basin acreage suggests Civitas "faces inventory depth concerns in the Permian Basin that are forcing its hand to backfill inventory amid a scarcity of available assets."  Finally, in addition to balance sheet concerns, KeyBanc took issue with management's lack of clarity regarding the "fate of the DJ Basin," and stated that it had "less confidence and more questions about operations, given the updates [. . .] If drilling economics are as good as management claims, why let oil decline 5% (ex-acquisition) in a $70/[barrel of crude oil ('bbl') West Texas Intermediate ('WTI')] world? Why did management choose to have zero 4Q24 TILs, creating this significant production decline in 1Q25? How do these factors tie into the abrupt departure of a COO who had been in the role less than two years?"

10.   On this news, Civitas's stock price fell $8.95 per share, or 18.15%, to close at $40.35 per share on February 25, 2025.

11.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Plaintiff is a resident of this Judicial District.  Moreover, pursuant to Civitas's most recent Annual Report on Form 10-K with the SEC, as of February 21, 2025, there were 93,017,260 of the Company's common shares outstanding.  Civitas's common stock trades on the New York Stock Exchange ("NYSE").  Accordingly, in addition to Plaintiff, there are presumably hundreds, if not thousands, of investors in Civitas's securities located in the U.S., some of whom, like Plaintiff, undoubtedly reside in this Judicial District.

15.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16.     Plaintiff, as set forth in the attached Certification, acquired Civitas securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.  Plaintiff is a resident of Middlesex County, New Jersey, which is located in this Judicial District.

17.     Defendant Civitas is a Delaware corporation with principal executive offices located at 555 17th Street, Suite 3700, Denver, Colorado 80202.  Civitas's common stock trades in an efficient market on the NYSE under the ticker symbol "CIVI."

18.     Defendant M. Christopher Doyle ("Doyle") has served as Civitas's President and Chief Executive Officer at all relevant times.

19.     Defendant Marianella Foschi ("Foschi") has served as Civitas's Chief Financial Officer at all relevant times.

20.     Defendants Doyle and Foschi are collectively referred to herein as the "Individual Defendants."

21.     The Individual Defendants possessed the power and authority to control the contents of Civitas's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Civitas's

SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Civitas, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

22.    Civitas and the Individual Defendants are collectively referred to herein as "Defendants".

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

23.    Civitas is an independent exploration and production company focused on the acquisition, development and production of crude oil and liquids-rich natural gas from its assets in the DJ Basin in Colorado and the Permian Basin in Texas and New Mexico. As of December 31, 2024, the Company owned a working interest in a net total of 530,200 acres.

24.    Civitas recognizes revenue from the sale of produced crude oil, natural gas, and NGL. Accordingly, maintaining high volumes of oil production is critical to the Company's ability to achieve revenue growth.

**Materially False and Misleading Statements Issued During the Class Period**

25.    The Class Period begins on February 27, 2024, when Civitas issued a press release announcing the Company's Q4 and full year 2023 results.  The press release stated, in relevant part:

> "Civitas is a remarkably different company today. As our DJ Basin asset continues to outperform, we were successful in strategically expanding our portfolio over the last year by capturing accretive acquisitions that provide us with important scale and diversification in another world-class unconventional basin, the Permian. ***With a lengthened runway of high-return development opportunities, we are better positioned today to create sustainable, long-term value for our shareholders. Our 2024 outlook builds on the momentum we created over the last year as our premier asset base provides us with more flexibility in our capital allocation and higher certainty in our outcomes. Our focus in 2024 is clear: maximize free cash flow, return cash to owners, and maintain our strong balance sheet***," said [Defendant] Doyle.
>
> **2024 Outlook Optimized**
>
> The Company maintained its previously-provided 2024 production guidance and decreased its estimated 2024 capital expenditures by $150 million. ***The improvement in capital efficiency is primarily driven by optimized activity levels, enhanced well productivity, and reduced cycle times***. Approximately 60% of total investments are planned to be allocated to the Permian Basin, with the remainder to the DJ Basin. The Company expects to drill and complete 130 to 150 gross wells in the Permian Basin and 90 to 110 gross wells in the DJ Basin. The majority of activity in the DJ Basin will be focused in the Watkins area, which is benefiting from higher well productivity. Capital expenditures and activity levels will be more weighted to the first half of the year, and production volumes are expected to increase modestly through the year.[1]

---

[1] All emphases included herein are added unless otherwise indicated.

26.     That same day, Civitas filed an Annual Report on Form 10-K with the

SEC, reporting the Company's financial and operational results for the year ended

December 31, 2023 (the "2023 10-K").  In providing an overview of the Company,

the 2023 10-K stated, in relevant part:

> Civitas is an independent exploration and production company focused on the acquisition, development, and production of crude oil and associated liquids-rich natural gas primarily in the Denver-Julesburg Basin in Colorado (the "DJ Basin") and the Permian Basin in Texas and New Mexico. These basins are among the major producing basins in the United States and are characterized by extensive production histories, mature infrastructure, long reserve lives, multiple producing horizons, ***enhanced recovery potential***, and a large number of operators.

> We are committed to pursuing compelling economic returns and generating significant Free Cash Flow. To that end, we strive to deliver a peer-leading operating cost structure, maximize capital efficiencies, and minimize capital reinvestment rates, ***while keeping production broadly flat over time***.

27.     Further, in discussing the Company's business strategies, the 2023 10-

K stated, in relevant part:

> Our primary objective is to maximize stockholder returns by responsibly developing our oil and natural gas resources. To achieve this, Civitas is guided by four foundational pillars that we believe add long-term, sustainable value. These pillars are:
>
> - ***Generate Free Cash Flow***. We have a scaled, high-quality asset base with ample low-breakeven inventory that provides us with the ability to generate significant Free Cash Flow, a non-GAAP financial measure, across two premier basins. We pursue value-accretive investments to enhance our ability to deliver incremental returns to our stockholders.

11

- ***Maintain a premier balance sheet***. A strong balance sheet, focus on cost control, and minimization of long-term commitments are critical to managing risk and achieving success within fluctuating market conditions.

28.    Appended to the 2023 10-K as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 by the Individual Defendants, attesting that "[t]he information contained in the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

29.    On February 28, 2024, Civitas hosted an earnings call with investors and analysts to discuss the Company's Q4 2023 results (the "Q4 2023 Earnings Call").  During the scripted portion of the Q4 2023 Earnings Call, Defendant Doyle stated, in relevant part:

> We have all of the key ingredients to deliver long-term value for our shareholders. An exceptional team, high-quality assets, inventory depth, a strong balance sheet, significant free cash flow and a track record of returning that cash to owners through cycle. We've significantly transformed Civitas over the last year and our future has never been brighter.
>
> ***
>
> Shifting now to our 2024 outlook, our optimized plan focuses on three primary objectives; first, continuing our momentum in the DJ and successfully integrating our new Permian assets. Second, maximizing free cash flow through disciplined and returns-focused investments. And third, maintaining our industry-leading shareholder returns while also improving our balance sheet.
>
> ***

Production volumes are anticipated to increase modestly through the year.

30.     On May 2, 2024, Civitas issued a press release announcing the Company's Q1 2024 results.  The press release stated, in relevant part:

> "Civitas is off to a great start this year with strong performance across our portfolio," said [Defendant] Doyle. "This quarter was the first reporting period that all our new businesses were together, and our results highlight just the beginning of Civitas' bright future ahead. In the Permian, our execution is already unlocking value through improved cycle times and cost reductions, and in the DJ, performance continues to exceed expectations. We surpassed our goal to sell $300 million in non-core assets, and we will use the proceeds to strengthen our balance sheet and support our shareholder return program. ***Civitas is well positioned to create future value for our shareholders through the execution of our strategic principles: maximizing free cash flow, enhancing our strong balance sheet, returning cash to owners***, and leading in ESG."

31.     On May 3, 2024, Civitas hosted an earnings call with investors and analysts to discuss the Company's Q1 2024 results (the "Q1 2024 Earnings Call"). During the scripted portion of the Q1 2024 Earnings Call, Defendant Doyle stated, in relevant part:

> On an annual basis, the $300 million of assets would have generated approximately $70 million of EBITDA at $75 oil. Now connecting the dots here, these non-core assets traded at a material step-up in value from where our remaining core assets currently trade. ***Importantly, the quality of our portfolio, our strong operational execution and our confidence in achieving this year's targets will allow us to maintain full-year volume guidance despite selling 5,000 [barrel of oil equivalent ("BOE")] per day***. This is essentially a 1.5% increase in our sales volume guidance for the year with no CapEx change.

*** 

13

In March, we commenced production on a large number of new Delaware wells. Early production performance is in line with expectations. Production from these wells along with additional TILs through the summer should drive oil growth in the Permian through the year.

32. On August 1, 2024, Civitas issued a press release announcing the Company's Q2 2024 results. The press release stated, in relevant part:

"Civitas' team and assets continue to perform very well, as demonstrated by our strong second quarter results," said [Defendant] Doyle. "At this time last year, we transformed our Company through multiple Permian Basin acquisitions, which significantly expanded our scale, depth and quality of inventory. ***Since then, we've driven production ahead of plan, lowered drilling and completion costs, and enhanced margins through reduced operating costs, evidencing that assets are better in Civitas' hands***. In the DJ Basin, we continue to execute very well, and the regulatory environment has been derisked for multiple years into the future. In support of these results and the value we are creating, our Board has recently increased our share buyback authorization and enhanced our capital return framework by adding flexibility for us to execute repurchases in times when our equity does not reflect the underlying value of our high-quality business. I am highly confident in our execution and our focused business strategy to capture the long-term value within Civitas."

33. On August 2, 2024, Civitas hosted an earnings call with investors and analysts to discuss the Company's Q2 2024 results (the "Q2 2024 Earnings Call"). During the scripted portion of the Q2 2024 Earnings Call, Defendant Doyle stated, in relevant part:

Today, our Permian assets are fully integrated within Civitas and producing more than 185,000 BOE per day. ***Importantly, production is ahead of plan, oil is ahead of plan, well costs are below expectations and reduced operating costs or enhancing cash margins, all while maintaining top quartile safety environmental performance. In a***

14

***short amount of time, our team has executed faster and better than we planned and certainly well ahead of our underwriting assumptions***.

At the same time, we continue to deliver exceptional results in the DJ Basin, recent highlights, including completing our non-core asset sales at an accretive valuation, helping to secure a broad-based regulatory agreement that increases development clarity for years to come and driving exceptional performance from our inventory-rich walk-ins area. Simply put, there is no question that Civitas is stronger today, and we are better positioned than ever to drive differentiated returns for our shareholders.

And moving to our second quarter results, starting with production. Total volumes were above plan as the Permian production was up about 12%. Oil was up 5%. This is driven by strong well performance and continued cycle time acceleration, more than offsetting the impact from non-core asset sales and some temporary third-party facility downtime that occurred in the DJ. Cash operating expenses were 2.5% lower than the first quarter and less than $9 a BOE. Our teams remain laser-focused on driving down our cost structure across all basins.

\*\*\*

I'd like to shift now, however, to three areas to have me really excited about what's to come. ***First, operational execution is absolutely improving the business every single day.*** Second, our second half outlook reflects the strength of our asset base and our team's capabilities. And third, our enhanced capital return framework will provide additional flexibility to maximize shareholder value.

\*\*\*

Now leveraging that strong operational execution, our outlook for the remainder of 2024 continues to improve. Full-year CapEx lowered by $50 million. Operating costs decreased by approximately $25 million. We have raised sales volumes expectations 3% from our original guidance adjusting for asset sales. ***Looking forward, we expect total volumes and oil to grow quarter-over-quarter through the end of the year.***

34.    On November 7, 2024, Civitas issued a press release announcing the

Company's Q3 2024 results.  The press release stated, in relevant part:

> "We've accomplished great things in 2024, including rapidly
> integrating new assets, delivering sustainable capital efficiency gains,
> proving up new zones for future development, and capturing additional
> inventory that expands our runway of high-return opportunities," said
> [Defendant] Doyle. "Our Board's recent action to further prioritize the
> balance sheet and share repurchases was well-timed, and we have been
> aggressively repurchasing our stock, while also reducing debt. As we
> look to 2025, we are focused on generating significant free cash flow,
> reducing leverage, and returning capital to shareholders. ***Our high-
> quality assets, with positions of scale in the lowest-cost oil basins in
> the U.S, strong capital discipline, and top-tier execution, position us
> well to create value in 2025 and beyond***."

35.    On November 8, 2024, Civitas hosted an earnings call with investors

and analysts to discuss the Company's Q3 2024 results (the "Q3 2024 Earnings

Call").  During the scripted portion of the Q3 2024 Earnings Call, Defendant Doyle

stated, in relevant part:

> Our Permian acquisitions added depth and quality to our inventory
> doubling the size of the company. With scaled positions now in the DJ
> and the Permian we have high quality diversified portfolio of
> opportunities in the lowest break-even basins in the U.S. Our team
> continues to improve and add to that position delivering sustainable
> capital efficiency gains proving up new zones for development and
> capturing additional inventory that expands our runway of high return
> opportunities all while returning significant amounts of capital to our
> shareholders.
>
> ***
>
> On an equivalent basis third quarter volumes were slightly above
> expectation. Revenues benefited from strong oil realizations and solid
> natural gas hedging gains. Oil volumes were a little light in the quarter

due to unexpected downtime at third-party facilities in the DJ and water takeaway constraints in the Permian *but these temporary issues have now been resolved*. Capital investments in the third quarter reflect facility spend pulled-forward from the fourth quarter, as well as accelerated drilling and completion activity.

In yesterday's materials we provided detailed fourth quarter guidance where you can see the lower fourth quarter capital guide. *We remain on track with all full year deliverables including volumes, CapEx, operating costs and most importantly free cash flow*. On production factoring in our investments from earlier this year we're above the mid-point of our original oil guidance for the year.

***

Before we take your questions let me briefly talk about 2025. As we've said in the past our priorities have not changed and will be guided by our strategic pillars. Generate significant free cash flow, enhance the balance sheet, return capital to shareholders and lead in ESG. *Production will be an outcome of the plan* not the driver as we seek to balance each of these strategic imperatives.

36.    Further, during the Q&A portion of the Q3 2024 Earnings Call, when asked to discuss the Company's plan to create value moving forward, Defendant Doyle responded, in relevant part:

As we step back we think about how we've established this company and how we'll run this company. *The basic model as you know is we're going to keep production broadly flat*. We're going to peel out as much capital as we can, get costs as low as we can and really focus in on maximizing free cash flow.

37.    Also during the Q&A portion of the Q3 2024 Earnings Call, when asked "[w]ould you still expect to hold volumes flat year-over-year with a more level-

17

loaded program and in a more level-loaded program how would you expect CapEx to trend year-over-year?" Defendant Doyle responded, in relevant part:

> I think, as we headed into 2024 and we had a guide of $195 million capital, we knew that that was not a sustainable level of capital we were going to let that fall off through the year. The shape of 2024 very first half weighted, you had [TILs] really concentrated in the in the middle of the year, ***that[] ultimately does mean production is going to start climbing at the end of the year and into the first quarter before we pull up with [TILs] sort of mid-quarter***.

38.     Finally, during the Q&A portion of the Q3 2024 Earnings Call, when asked "given the production profile in 2024, how should we kind of think about one half 2025 declines and kind of the activity required next year to keep 2024 volumes flat?" Defendant Doyle responded, in relevant part:

> So if you look at us as a company, our oil declines, call it, high 30s on an annual basis. The way that we've shaped capital again focused on free cash flow and getting to a more sustainable level loaded program, you're looking at [TILs] a low quarter in the fourth quarter and then you'll see us decline into that first quarter, we'll pick back up mid quarter with the [TILs] and an activity will pick up as well. And so our level load for 2025 is going to be a little bit more activity than what we see in the fourth quarter, but you are going to see us drop down a little bit ***before coming out of that into the back half of the first quarter and second quarter***.

39.     The statements referenced in ¶¶ 25-38 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Civitas was highly likely to significantly reduce its

oil production in 2025 as a result of, *inter alia*, declines following the production peak at the DJ Basin in the fourth quarter of 2024 and a low TIL count at the end of 2024; (ii) increasing its oil production would require the Company to acquire additional acreage and development locations, thereby incurring significant debt and causing the Company to sell corporate assets to offset its acquisition costs; (iii) the Company's financial condition would require it to implement disruptive cost-reduction measures including a significant workforce reduction; (iv) accordingly, Civitas's business and/or financial prospects, as well as its operational capabilities, were overstated; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

### The Truth Emerges

40.     On February 24, 2025, Civitas announced its financial results for the fourth quarter and full year 2024. Among other items, the Company reported revenue of $1.29 billion, missing consensus estimates by $3.44 million, and non-GAAP EPS of $1.78 for the quarter, missing consensus estimates by $0.21 per share. In addition, Civitas reported net income of $151.1 million, or $1.57 per share, compared with $302.9 million, or $3.23 per share, in the year-ago quarter, and interest expense—the cost incurred by an entity for borrowed funds—of $456.3 million for the year.

41.    That same day, the Company issued a press release entitled "Civitas Resources Provides 2025 Outlook Focused on Free Cash Flow and Debt Reduction." The press release stated, in relevant part:

**2025 Outlook Highlights**

\*\*\*

- Delivering oil production between ***150 and 155 thousand barrels per day*** ("MBbl/d") on average

\*\*\*

- Expanding Permian Basin position with a $300 million bolt-on transaction that adds 19,000 net acres and approximately 130 future development locations in the Midland Basin
- Executing on new divestment target of $300 million

\*\*\*

Full-year capital investments are better level-loaded in support of sustainable capital efficiencies, with approximately 55% of investments planned for the first half of the year, as compared to 63% in the first half of 2024. ***This change is anticipated to lower average annual oil volumes by approximately 3 MBbl/d as compared to 2024. First quarter oil volumes are expected to be the low point for the year, averaging 140 to 145 MBbl/d, mostly as a result of few TILs in late 2024 and early 2025. As compared to the fourth quarter of 2024, lower volumes are primarily driven by the DJ Basin, due to natural declines following peak production in the fourth quarter, a low TIL count exiting 2024 and in the first quarter of 2025, as well as severe winter weather and unplanned third-party processing downtime in the first quarter***.

\*\*\*

20

> *Additionally, to solidify the Company's low-cost structure, Civitas announced an approximate 10% reduction in its workforce across all levels of the organization.*

42.     The Company's revelation that it would deliver oil production "between 150 and 155 thousand barrels per day ('MBbl/d') on average" in 2025—a year-over-year decline of approximately 4%—was conspicuously at odds with Defendant Doyle's prior representation to investors during the Q3 2024 Earnings Call that oil production would "drop down a little bit *before coming out of that into the back half of the first quarter and second quarter*."

43.     Finally, in a filing on Form 8-K with the SEC, Civitas also announced the termination of its COO Hodge Walker, who had occupied the role for only 22 months, and CTO Jerome Kelly, effective immediately.

44.     Market analysts were quick to comment on the Company's announcements, expressing particular concern about Civitas's reduced 2025 oil production guidance.  For example, on February 24, 2025, KeyBanc published a report downgrading Civitas to Sector Perform from Outperform which stated, in relevant part:

> Following disappointing 2025 guidance after the close, we downgrade CIVI shares to Sector Weight. The Permian pivot is driving a prolonged leverage reduction. No comment from management about media reports it may divest the DJ Basin creates uncertainty, and the abrupt termination of the COO after 22 months deeply concerns us as something other than a board mandate to cut costs. *These factors, combined with a 2025 guide forecasting a 4% y/y decline in oil, will likely weigh on CIVI shares on Tuesday and over the next few*

*months, until we see improved operations and less debt*. We spoke with management after the close and received some answers, but still have many questions. We can't defend CIVI shares amid operational volatility and little deleveraging. We expect these items to overshadow positives in the report (well cost reductions, strong Watkins update). Estimate changes reflect actual 4Q24 results, but no changes to future quarters.

**Key Investment Points**

- **We see elevated leverage into 2026.** We came into earnings hoping for clarity on media reports about Civitas selling its CO assets. We received none. Instead, we see a $300M Midland bolt-on with 3 [thousand barrels of oil equivalent per day ("mboe/d"] of production, another $300M of CO asset sales planned, and the impact of the Vencer deferred payment and a potential working capital draw in 2Q25 for ad valorem keeping leverage at/above $4.5B for much of 2025.

- **2025 production guide looks worse when factoring in Midland acquisition.** We were disappointed at the extent of the near-term decline in oil, with 1Q25 guided to -13% q/q. *The full-year guide of 152.5 mboe/d reflects a 4% y/y decrease but also includes 1.5 mb/d from the Permian acquisition, which suggests a 5% y/y decrease.* Management told us tonight that the termination of the former COO was a cost-cutting initiative, but we believe this disappointing 2025 outlook, along with a still-normalizing [drilling and completion] program, may also be factors.

- **We don't believe repurchases make sense now.** With pro forma net debt up to $5.3B (YE24 at $4.4B, $475M for Vencer, $300M for bolt-on), we believe the priority for [free cash flow ("FCF")] should be debt reduction. Management's comments about FCF exceeding $1B/year over the next three years are helpful, but there are too many calls on that FCF in 2025, and too much interest expense ($114M in 4Q24), in our view.

*** * ***

**Downgrade CIVI shares to Sector Weight, Remove $84 PT**

We come away confused and disappointed by 4Q24 earnings and a tepid 2025 outlook. We were anticipating news of inorganic debt reduction, likely in the form of a meaningful sale of DJ Basin assets. ***But tonight's news of another round of $300M of asset sales does not move the needle for a company with over $5B of debt (pro forma for 1Q25 transactions). Annual interest expense guidance of $400M concerns us, and the decision to buy Midland Basin acreage now suggests Civitas faces inventory depth concerns in the Permian Basin that are forcing its hand to backfill inventory amid a scarcity of available assets.***

In addition to our balance sheet concerns, we come away with less confidence and more questions about operations, given the updates we received. ***If drilling economics are as good as management claims, why let oil decline 5% (ex-acquisition) in a $70/b WTI world? Why did management choose to have zero 4Q24 TILs, creating this significant production decline in 1Q25? How do these factors tie into the abrupt departure of a COO who had been in the role less than two years?***

For these reasons, we believe it is prudent to downgrade and await more clarity on operations, the balance sheet, and the fate of the DJ Basin.

45.    On this news, Civitas's stock price fell $8.95 per share, or 18.15%, to close at $40.35 per share on February 25, 2025

46.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

47.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.   For example, during the Class Period, while

disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for Civitas securities, Defendant Doyle enriched himself by engaging in insider sales of the Company's shares while those shares traded at artificially high prices. Specifically, during the Class Period, Defendant Doyle sold approximately 29,244 shares of Civitas stock for total proceeds of approximately $1.7 million.

48.    Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Civitas securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

50.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Civitas securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Civitas or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

51.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

53.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Civitas;

- whether the Individual Defendants caused Civitas to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Civitas securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

54.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

55.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Civitas securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Civitas securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

56.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

57.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

58.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

59.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Civitas securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Civitas securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other

statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Civitas securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Civitas's finances and business prospects.

62.    By virtue of their positions at Civitas, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Civitas, the Individual Defendants had knowledge of the details of Civitas's internal affairs.

64.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Civitas.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Civitas's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Civitas securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Civitas's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Civitas securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

65.    During the Class Period, Civitas securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Civitas securities at prices

artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Civitas securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Civitas securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

68.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

31

69.    During the Class Period, the Individual Defendants participated in the operation and management of Civitas, and conducted and participated, directly and indirectly, in the conduct of Civitas's business affairs.  Because of their senior positions, they knew the adverse non-public information about Civitas's misstatement of income and expenses and false financial statements.

70.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Civitas's financial condition and results of operations, and to correct promptly any public statements issued by Civitas which had become materially false or misleading.

71.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Civitas disseminated in the marketplace during the Class Period concerning Civitas's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Civitas to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Civitas within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Civitas securities.

72.    Each of the Individual Defendants, therefore, acted as a controlling person of Civitas.  By reason of their senior management positions and/or being directors of Civitas, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Civitas to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Civitas and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Civitas.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demands a trial by jury.

Dated: May 2, 2025                    Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

# CERTIFICATION PURSUANT
# TO FEDERAL SECURITIES LAWS

1.       I, _Jeremy Lin_____, make this declaration

pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section

21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private

Securities Litigation Reform Act of 1995.

2.       I have reviewed a Complaint against Civitas Resources, Inc. ("Civitas") and

authorize the filing of a comparable complaint on my behalf.

3.       I did not purchase or acquire Civitas securities at the direction of plaintiffs' counsel

or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.       I am willing to serve as a representative party on behalf of a Class of investors who

purchased or otherwise acquired Civitas securities during the Class Period as specified in the

Complaint, including providing testimony at deposition and trial, if necessary.  I understand that

the Court has the authority to select the most adequate lead plaintiff in this action.

5.       The attached sheet lists all of my transactions in Civitas securities during the Class

Period as specified in the Complaint.

6.       During the three-year period preceding the date on which this Certification is

signed, I have not served or sought to serve as a representative party on behalf of a class under the

federal securities laws.

7.       I agree not to accept any payment for serving as a representative party on behalf of

the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such

reasonable costs and expenses directly relating to the representation of the class as ordered or

approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____4/10/2025_____
                **(Date)**



_____
                **(Signature)**

Jeremy Lin
_____
                **(Type or Print Name)**

**Civitas Resources, Inc. (CIVI)**                                                           **Jeremy Lin**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/4/2024 | 0.464 | $68.2700 |
| Purchase/Acquisition | 6/4/2024 | 1 | $68.8000 |
| Sale | 7/19/2024 | (0.587) | $71.7600 |